IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:22cr160-MHT |
| | ) | (WO) |
| JEREMIAH LEE TRAMMER | ) | |

OPINION AND ORDER

Defendant Jeremiah Lee Trammer was indicted for possession of a controlled substance (*see* 21 U.S.C. § 844) and being a felon in possession of a firearm (*see* 18 U.S.C. § 922(g)(1)).  Following his arrest in June 2022, a United States Magistrate Judge held a detention hearing and ordered him to be detained pending trial. Pursuant to 18 U.S.C. § 3145(b), Trammer has filed a motion asking that this district court judge review the magistrate judge's detention order de novo.

After an independent and de novo review of the transcript of the testimony presented to the magistrate judge, as well as additional evidence that was not before the magistrate judge (including evidence presented by the

parties in briefings and subsequent testimony before this court), the court will allow Trammer's release, albeit with strict conditions imposed, including electronic location monitoring and the requirement that Trammer be generally confined to his home, workplace, and court-ordered treatments.

## I. Legal Standard

When the government seeks to detain a defendant pending trial, the court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The burden is on the government to prove with clear and convincing evidence that no conditions of release will reasonably assure the safety of the community, or, alternatively, prove by a preponderance of evidence that the defendant poses a risk of flight. *See United States v. King*, 849 F.2d 845, 488-490 (11th

Cir. 1988) (setting forth procedures for district courts to follow on motions to revoke or amend detention orders entered by magistrate judges). In determining whether pretrial detention is appropriate, district courts have "substantial latitude." *Id*. at 487.

In assessing the appropriateness of pretrial release, the court must consider four factors: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person, including but not limited to the person's character, family ties, employment, community ties, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (4) the nature and seriousness of the danger that would be posed by the person's release. *See* 18 U.S.C. § 3142(g). Danger to the community should be read broadly, so as to include "the danger that the defendant might engage in criminal activity to the detriment of the community." *King*, 849

3

F.2d at 487 n.2. However, consideration of the above factors shall not be construed as "modifying or limiting the presumption of innocence" afforded the defendant. 18 U.S.C. § 3142(j). Here, this court will discuss these factors in combination, addressing the arguments with regard to both community safety and risk of flight.

In a hearing on the record on September 23, 2022, the parties agreed that this court's review of the magistrate judge's detention decision is de novo, and further agreed that the reviewing court may consider new evidence, as it did here. *See King*, 849 F.2d at 491.


## II. Discussion

The government asserts that there are no conditions of release which will reasonably assure both Trammer's continued appearance in court and the safety of the community at large. *See* Mot. for Detention (Doc. 5). Upon review of the evidence presented by both sides, the

**4**

court finds the government has not met its burden on either count.

First, Trammer has strong family and community ties, including, notably, steady employment that he maintained until he was taken into federal custody in June 2022. Until his arrest, he had worked for more than a year as a full-time cook at a Sonic Drive-In in Montgomery. His supervisor described him as "one of the best employees [she] ever had a chance to work with," and indicated her immediate willingness to hire him back in a full-time position upon his release. Def.'s Ex. List (Doc 61-2) at 2. This court has observed over the years that employment is all but essential to a person's ability to maintain stability and serve as a productive citizen in the community. It does not take lightly the prospect of terminating an individual's employment—especially where it has been longstanding, as here—at the pre-trial stage. In addition, as described later, Trammer suffers from drug addiction and has other mental-health issues.

5

Employment is a critical element in the treatment of these issues.  To strip Trammer of his employment would be extremely detrimental to the treatment he desperately needs, and should have now as part of his pretrial release.  As Dr. Adriana Flores describes, returning to work would provide Trammer with "financial stability, increase[d] self-esteem, [and] distraction from depression," which would directly support his recovery from his severe cannabis use disorder.  Def.'s Psychiatric Evaluation (Doc. 59-1) at 2-3.

Trammer also has extremely close ties to family members who live in the local community, including his sister and her children. His sister provides him with transportation to work and to his court hearings, and has expressed her willingness to house him pending trial and cooperate with any conditions the court deems necessary for pre-trial release.

Trammer also has a consistent history of compliance with court dates, including affirmative attempts to alert

the court on an occasion when he was concerned about a transportation-related obstacle. Most impressively, he went through extensive efforts to notify a state-court judge that, because he was having auto-mechanical issues, he could not keep a court date. He not only called the court, he followed up with a personal letter, explaining his difficulty. The state court then delayed the hearing.

It is also noteworthy that, between February 23, 2021, when he was bonded out on the charges at issue here, and June 15, 2022, when he was arrested on those charges, he has, with two instances explained below, remained out of custody and made no attempt to flee from law enforcement or avoid his court appearances.

The first exception is an instance in which Trammer failed to appear for a required court date, leading to the arrest warrant on which Trammer was ultimately taken into custody. However, the court is convinced that, as Trammer and his sister contend, he never received notice

of this hearing, because the state sent the notice to an address that neither sibling has used for more than a decade. Their explanation is supported by the state government's own records, which show the notice in question was returned to the circuit clerk and stamped "Return to Sender" and "Not Deliverable as Addressed" in January 2022. *See* Returned Mail, *Alabama v. Trammer*, CC-2021-001074 (Jan. 18, 2022).

There is also a September 2021 incident, in which Trammer was arrested after he allegedly failed to pull off the road in a timely manner. However, the circumstances surrounding this arrest remain cloudy at best. Trammer was charged in state court with possession of marijuana, attempt to elude, and pistol-carrying without a license, but the latter two charges were *nol prossed*. Further, the state arrest warrant provides no clarity as to how long Trammer was driving before he ultimately pulled over, whether or not he was speeding, how the interaction ended, or where the pull-over

8

occurred.   These records are insufficiently specific to conclude that Trammer was, in fact, trying to elude custody.

Finally, there is Trammer's drug addiction.   Dr. Flores, who examined Trammer, states that he suffers from severe cannabis use disorder, in addition to a moderate level of depression.   She has recommended that he receive ongoing counseling with a therapist and a psychiatrist to treat his mental-health issues.   (She did not recommended separate substance abuse treatment, explaining that mental health treatment would be the best way to address the root causes of his cannabis use and would take up most of his time.)   The court agrees with Dr. Flores's recommendations.   As this court has observed, drug addiction is a disease and, like other diseases, it needs treatment.   *United States v. Mosely*, 277 F. Supp. 3d 1294, 1925 (M.D. Ala. 2017) (Thompson, J.).   This court's pretrial services has the resources

to treat that addiction as a part and condition of his release.  This treatment should start now if possible.

The court is concerned by evidence of what the pretrial services officer described as a "scuffle" between Trammer and a police officer during his arrest in February 2021.  Pretrial Services Report (Doc. 44-3) at 6.  However, the government has not yet presented evidence regarding the specifics of the interaction in question.  By itself, references to this incident are insufficient to meet the "clear and convincing" standard required in the face of the presumption that Trammer be granted pre-trial release.

Finally, it is true that Trammer was convicted on six counts of robbery in 2006, as well as one count of second-degree property theft in 2013.  However, Trammer, who is now 33, was 16 years old at the time of the robbery convictions.  The convictions are now 16 years old and occurred when he was a minor.  Trammer has no other convictions for violent crimes.  The court is not

convinced that these old offenses, from when Trammer was
a minor, should now be held against him in deciding
whether to release him today.

Other than arguing that Trammer's history is evidence
of his general dangerousness, the government did not
present any evidence that Trammer poses a violent threat
to any particular person or the community in general.  No
one testified to fearing him or to any history of violence
more recent than the robberies for which he was convicted
during his teenage years.  There is his history of drug
use, but as stated, this appears to result from an
addiction that warrants immediate and intense
mental-health treatment.  There is also the evidence of
fire-arm possession, which admittedly does trouble the
court greatly—but the court is also convinced that this
concern can be addressed through rigorous release
conditions and does not outweigh the factors supporting
release.

After looking at the totality of the circumstances, including a weighing of the four factors described above, the court is convinced that there are conditions that will reasonably assure Trammer's appearance for court proceedings and the safety of other individuals and the community.   In recognition of the concerns identified above, the court is unwilling to release Trammer with only the standard conditions of supervised release. Instead, there are additional conditions that apply.

The first condition is that Trammer be geographically confined to a court-approved list of locations: his home, which he shares with his sister; his workplace, Sonic Drive-In; his doctors' offices, as he engages in counseling and additional mental-health treatment; and any location required by his pretrial officer.   The second condition is that Trammer be subject to location monitoring, so as to assure that his whereabouts are known at all times.   The court believes this combination of conditions will adequately assure the safety of the

community and Trammer's continued appearance at court hearings.

The third condition is that Trammer comply with all court-mandated courses of treatment, including counseling, for his mood disorders and cannabis use disorder.

The final condition is that Trammer maintain full-time employment, in order to demonstrate his responsibility to himself and to the community.


* * *

Accordingly, it is ORDERED that:

(1) The motion to revoke the detention order (Doc. 47) is granted.

(2) Defendant Jeremiah Lee Trammer shall be released from detention pending trial, subject to home detention (except with regard to employment, mental-health treatment, and as otherwise allowed by his pretrial

13

officer), the location monitoring program, and ongoing mental health treatment.

(3) Defendant Trammer is ordered to stay with his sister, Quatica Trammer.

(4) The United States Magistrate Judge shall arrange for defendant Trammer's release subject to the "standard conditions" and the additional conditions set forth in this order.

DONE, this the 27th day of September, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

14